(70 South. 72)

No. 20336.

LEIDIGH–DALTON LUMBER CO., Limited, v. HOUCK et al. C. F. PETTY STAVE CO. v. SAME. In re GIBSLAND STATE BANK.

(Feb. 8, 1915. On Rehearing, May 10, 1915. On Second Rehearing, Nov. 15, 1915.)

*(Syllabus by Editorial Staff.)*

1. BANKS AND BANKING &#x269D;77—LIQUIDATORS —ACCOUNTING—SUMMARY PROCESS.

Under Code Prac. art. 754, declaring that summary practice is to be used in every case where expressly prescribed, a rule for an accounting will not lie against liquidators appointed by the stockholders of a bank now in receivership, there being no provision in law for summary process against such persons, for they do not stand as receivers appointed by the court and creditors must sue them by ordinary process.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 165–176½; Dec. Dig. &#x269D;77.]

2. APPEAL AND ERROR &#x269D;863—APPEAL—REVIEW—DECISIONS REVIEWABLE.

Only that portion of a judgment from which an appeal is taken can be reviewed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1765, 1766, 3450–3455; Dec. Dig. &#x269D;863.]

On Rehearing.
*(Syllabus by the Court.)*

3. CORPORATIONS &#x269D;560—LIQUIDATORS—LIABILITY OF.

Liquidators of an insolvent concern will be held to a strict accounting of all the property coming into their hands.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2253–2260, 2262; Dec. Dig. &#x269D;560.]

On Second Rehearing.
*(Syllabus by Editorial Staff.)*

4. APPEAL AND ERROR &#x269D;870—APPEAL—REVIEW — MATTERS APPEALED FROM — EFFECT OF APPEAL.

Where two separate suits against liquidators of an insolvent bank ·in receivership were consolidated with a rule for an accounting, and but one judgment was rendered in which the suits were dismissed and the rule denied, an appeal from such rule carries with it all proceedings.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3451, 3487–3489, 3491–3512; Dec. Dig. &#x269D;870.]

5. BANKS AND BANKING &#x269D;77—LIQUIDATORS —RIGHTS OF.

Liquidators of an insolvent bank appointed by the stockholders occupy no official position, and the receivers subsequently appointed are the proper persons to maintain actions against them for an accounting; creditors not being entitled to sue for specific sums of money.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 165–176½; Dec. Dig. &#x269D;77.]

Provosty, J., dissenting in part.

Appeal from Third Judicial District Court, Parish of Bienville; J. E. Reynolds, Special Judge.

Suits by the Leidigh-Dalton Lumber Company, Limited, against J. H. Houck and others, liquidators, and by the C. F. Petty Stave

Company against the same defendants, consolidated with the matter of the receivership of the Gibsland State Bank. From a judgment dismissing the rule requiring defendants to furnish an account, rejecting the opposition to their account and homologating it, the Leidigh Dalton Lumber Company appeals. Separate suits dismissed, and proceeding affirmed.

See, also, 136 La. 39, 66 South. 390.

S. C. McGarrity and W. U. Richardson, both of Arcadia, for appellant. Stubbs, Russell, Theus & Wolff, of Monroe, and Wimberly & Reeves, of Arcadia, for appellees liquidators of Gibsland State Bank.

PROVOSTY, J. The defendants in the two suits which have been consolidated in this matter with the receivership of the Gibsland State Bank were at one time in charge of the said bank and its affairs as liquidators, by appointment of the stockholders. A few months before the filing of said suits, they were superseded in their said functions by receivers appointed by the court. The plaintiffs in said suits are creditors of said bank for unreturned deposits. They allege that the said liquidators have not accounted to the receivers for certain sums which they specify, and they pray that the said liquidators be condemned to pay them said sums. Simultaneously with the filing of the said suits, they took a rule in the receivership proceedings on said liquidators to show cause why they should not render an account of their administration to the court. The liquidators excepted to this rule on the ground that, not being parties to the receivership proceedings, they could not be proceeded against by rule, i. e., summarily. With reserve of this exception, they filed their answer to the rule, submitting an account of their administration. To this account the plaintiffs in the two suits and in the rule

138 La.—6

filed an opposition. The court overruled the exception, and consolidated the whole matter, to wit, the two suits, the rule to show cause, and the opposition to the account; and after trial rendered judgment dismissing the rule and the two suits, rejecting the opposition to the account, and homologating the account. From this judgment no appeal was taken, except as appears by the following motion:

"On motion of counsel for opponent made in open court, appeal suspensive and devolutive are granted to opponent, Leidigh-Dalton Lumber Company, returnable to the honorable Supreme Court of Louisiana, at New Orleans, on Monday, June 30, 1913, and according to law. The devolutive appeal bond is fixed in the sum of $400; the suspensive appeal bond is fixed according to law."

It is thus seen that the Leidigh-Dalton Lumber Company is the only appellant, and that it has appealed only in its quality of opponent to the account, or, in other words, only from that part of the judgment dealing with the rule to show cause.

The appellees have answered the appeal, asking that their exception to the form of the proceeding be sustained.

[1] That prayer must be granted. Summary process can be resorted to only in those cases where it is expressly authorized by law. C. P. art. 754. It cannot be extended to other cases. Succ. Irwin, 33 La. Ann. 68. No law authorizes summary process against liquidators appointed by the stockholders of a corporation to settle the affairs of the corporation. Such liquidators derive their authority exclusively from the corporation and owe an account only to it. Creditors of the corporation cannot sue them by summary process, but only by ordinary process. In Hernandez v. Dart, 109 La. 884, 33 South. 906, this court said:

"Whatever funds or other assets of the succession the attorneys of the representative of a succession may have in their possession they owe an account of to their client, but not to the court."

The said exceptions should therefore have been sustained, and the rule dismissed.

[2] This court cannot review the judgment in so far as it dismissed the said two suits against the liquidators, no appeal having been taken from that part of it.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside in so far as it homologates the account filed by the liquidators herein, and that the judgment overruling the exception filed herein by the liquidators to the rule against them to show cause why they should not file an account be also set aside, and that the said exception be now sustained, and the said rule dismissed at the cost of the plaintiffs therein.

And it is further ordered that the appellant pay the costs of this appeal.

## On Rehearing.

SOMMERVILLE, J. These three cases, by consent in open court, were consolidated, tried together, and disposed of in one judgment. On the former hearing of the cause, our attention was directed by defendant to a motion by one of the plaintiffs for an appeal from an early ruling made during the course of the trial, and we refused to review the judgment appealed from in so far as it dismissed the two suits against the liquidators. On a re-examination of the record, it was found that an appeal was taken by all the opponents to the account of the liquidators which had been opposed in the consolidated proceedings, and a rehearing was ordered.

[3] The original party to the litigation was the Gibsland State Bank, which went into the hands of receivers December 22, 1910. Within two months thereafter, the stockholders met, and, under the terms of the charter of the bank, they elected liquidators in the persons of R. Colbert, C. J. Leary, and J. H. Houck, who superseded the receivers. The appointment of these liquidators was con-firmed by the court, and each one gave bond in the sum of $10,000 to the judge of the third district court of the state of Louisiana. About 12 months thereafter receivers were again appointed to the said bank, and took the assets over from the liquidators who had been previously appointed.

February 19, 1913, the several plaintiffs joined with what is termed in the transcript a petition and rule, in which they alleged themselves to be deposit creditors of the insolvent Gibsland State Bank, located at Gibsland, Bienville parish, La., which was then in the hands of receivers; that the former liquidators of the bank, Houck, Leary, and Colbert, had failed to render an account to the court or to the duly appointed receivers; that they had failed to deposit the money collected by them in bank as required by law; and they asked that defendants be required to file a true statement of their account and administration of the affairs of said bank during the time they administered upon them, and to pay all money shown to be in their possession according to law, and that on failure to comply with such order they be adjudged and condemned jointly and severally with their surety to pay 20 per cent. statutory damages.

Prior to this proceeding, the Leidigh-Dalton Lumber Company and the C. F. Petty Stave Company filed suits against the liquidators for certain amounts alleged to be due them as creditors of the Gibsland State Bank. The proceeding before referred to by the two creditors named is entitled on the transcript, "Petition and Rule." In the prayer attached to said document the plaintiffs term themselves petitioners, and they ask that the liquidators be cited to appear and answer. Citations were issued and served on the three defendants, ordering them to file answers within 10 days after service thereof, etc.

An order was made at, or about, the same time by the district judge directed to the liquidators to show cause on the 17th day of

March why they should not file a statement or account of their administration of the affairs of said bank. It appears that this order was not served, and the minutes of the court fail to disclose that anything was done under said order. Defendants formally asked that the order be dissolved, for the reason that it had never been served upon them.

Respondents appeared and excepted to the petition on the ground that it disclosed no cause of action, as there was no allegation that the court had appointed respondents as liquidators; and, not having been appointed by the court, that the court was without authority to order them to make an accounting; and that whatever rights the plaintiffs had could be only exercised by ordinary proceedings for settlement, and not by summary proceedings for an accounting; further, that no relief or judgment is prayed for, and that the defendants cannot be penalized for refusing to account; and, as no specific amount of indebtedness is alleged, that no statutory damages of 20 per cent. can be allowed. In the event of the overruling of said exceptions, they answered, denying all the allegations in plaintiffs' petition, or rule, and alleged that the entire assets of the Gibsland State Bank, except the amounts distributed, were turned over by them to the receivers duly and legally appointed by the court, and that all of the assets, including the books, are now in the hands of said receivers, and that they could not file an account.

A re-examination of the pleading which has been termed a rule shows it to have been a petition in an ordinary suit, filed under the title: In the Matter of the Liquidation of the Gibsland State Bank. The exception to the form of proceeding was properly overruled. The other exceptions were properly overruled; for plaintiffs alleged themselves to be deposit creditors of the Gibsland State Bank, and they had, in separate actions in the same court, sued defendants for specific amounts alleged to be due to them.

They (the liquidators) had been confirmed as liquidators of the Gibsland State Bank, by order of court, and they gave bond to the court for the faithful discharge of their duties as such liquidators. They were therefore officers of the court, and subject to the orders thereof. The exception to the form of proceedings was properly overruled.

An account was filed by the liquidators and opposed by plaintiffs.

On the trial of the case, an expert accountant was appointed to examine the account of the liquidators, together with the books and vouchers of the bank, and to report on same.

The accountant was also a witness, and he testified, in connection with his report, that defendant liquidators had accounted for $159.81 more than they had received as liquidators of the Gibsland State Bank.

But the witness arrived at his final conclusions by conjecture with reference to some of the items on the account made by him. He says in his report:

"Now, in explanation of the shortage of $3,329.25, will say that this amount came about in this way, I think and believe, the records will show it also. * * *

"Then, if we take these two amounts from the $4,829.42 total transfer, we will have * * * a balance of $3,489.03 which was, as far as I can judge from the records, applied on notes. Then, if we allow the liquidators' account credit for this amount, it will then show as over $159.81 final.

"Of course, it could be that some of the items I have claimed went to credit of note could have been placed otherwise, but the records do not show it."

The evidence on the trial of the case showed that the expert was wrong in his conjecture as to some of the items which he thought and believed went to credit of notes, and when he was examined on the basis of his belief with reference to certain credits which he supposed existed and which he allowed to defendants, he answered as follows:

"Q. Now, Mr. Deas, in making up your credits for the shortage as shown in the cash, you merely made it from supposition, and by dates for credits by some notes? A. Not merely supposition, only one conclusion to be reached,

when there is a transfer or when there is a payment, when there is a payment and no cash collected, it could be nothing other than a transfer. Q. Then you simply took it for granted when there was a payment shown, and, the cash was not shown, it was a transfer? A. Yes, sir. Q. Now, if that was a transfer, then it was a transfer to some note belonging to some party who was not a depositor in the bank? A. I don't know whether a depositor or not. Q. All the depositors were credited with their 25 per cent. dividend on the notes that the bank held against them? A. Yes, sir. Q. Then, if any other transfers were made, they were to notes over and above the 25 per cent.? A. Yes, sir."

The testimony of the witness was most uncertain and insufficient, and it is too weak upon which to base a conclusion. Defendants were serving as liquidators, and it was their duty to have kept complete and correct accounts of the business conducted by them. Only one of the defendants took the witness stand, and he did not attempt to show that what the expert "believed," or "thought," or "judged," might have been true. He testified that he transacted all of the business of the bank for the three liquidators, and he had it in his power to have proved any and all credits which were made or should have been made, and he did not attempt to do it.

The defendant appeared to be quite indifferent about the whole matter. With reference to the account prepared by him and filed under the order of the court, he testified:

"Well, the account for the liquidators was made up from a copy of the books. I will state with some apology to the court that I was not exactly careful about making that up, because I was disgusted with the spirit in which it was requested, and I embodied the books of the bank as the basis of this report, and, if there were any errors in that report, they should be reconciled by reference to the books themselves. Q. In other words, if there were any errors in that account, it is due to inaccuracy in checking from the books? A. Yes, sir; and, further, that part of the liquidators' account which shows transfers on notes and some other minor details were made up from memory largely. I thought I remembered the transactions and I could risk my memory, and I made them subordinate to the books themselves, which were the basis of the report."

The account shows an apparent deficit in cash and notes of nearly $9,000. But some,

perhaps all, of the missing notes, are accounted for; and we understood appellants to waive their claims for them. And the suits as to them were properly dismissed.

These accounts further show that defendants have failed to account for $3.450.89, received by them in cash, for which they are responsible.

It is therefore ordered, adjudged, and decreed that the judgment appealed from is annulled, avoided, and reversed; and it is now ordered that there be judgment in favor of plaintiffs the Leidigh-Dalton Lumber Company and the C. F. Petty Stave Company, and against R. Colbert, C. J. Leary, and J. H. Houck, ordering and directing them to amend the account filed by them as liquidators of the Gibsland State Bank, by placing thereon $3,450.89 cash, and that they be charged with said amount, as not having been accounted for by them, and that they be ordered to pay said amount to the receivers of the Gibsland State Bank, to be distributed in due course of administration; reserving to plaintiffs any rights they may have in and to said fund; all at the cost of appellees. The right to apply for a second rehearing is reserved to all parties.

MONROE, C. J., takes no part, not having heard the argument.

### On Second Rehearing.

LAND, J. On the first hearing of this case, this court said:

"It is thus seen that the Leidigh-Dalton Lumber Company is the only appellant, and that it has appealed only in its quality of opponent to the account, or, in other words, from that part of the judgment dealing with the rule to show cause.

"The appellees have answered the appeal, asking that their exception to the form of proceeding be sustained.

"That prayer must be granted. Summary process can be resorted to only in those cases where it is expressly authorized by law. C. P. art. 754. It cannot be extended to other cases. Succession Irwin, 33 La. Ann. 68."

On the second hearing of this case, this court said:

"They (the liquidators) had been confirmed as liquidators of the Gibsland State Bank, by order of court, and they gave bond to the court for the faithful discharge of their duties as such liquidators. They were therefore officers of the court, and subject to the orders thereof. The exception to the form of the proceedings was properly overruled."

The right to apply for a second rehearing was reserved to the parties.

The liquidators filed a petition for a rehearing, based on the grounds that the liquidators had never been confirmed by the district court, and had never given bond to the judge thereof, and therefore were not officers of the court, and could not be proceeded against in a summary manner for an accounting.

A second rehearing was granted to enable the court to more closely examine the confused transcript in these consolidated cases.

On December 22, 1910, C. W. Hamner and J. H. Houck were appointed and qualified as receivers of the Gibsland State Bank. By a subsequent order J. P. Jones was substituted for C. W. Hamner. On February 4, 1911, judgment was rendered on a rule to vacate the receivership, directing the receivers to turn over all the assets of the bank, to three commissioners, elected by stockholders to liquidate the affairs of said bank. On the same day the commissioners each gave bond and security in favor of the bank and all persons in interest, and then proceeded to liquidate the affairs of that institution for about 11 months, when they turned over the assets in their hands to other receivers appointed by the court in December, 1911.

On February 20, 1913, a paper styled a "Petition and Rule" was filed "In the Matter of the Liquidation of Gibsland State Bank No. 13 Receivership Docket," in the name of certain "deposit creditors," including the Leidigh-Dalton Lumber Company and the C. F. Petty Stave Company. This petition represented that the three liquidators had administered the affairs of the insolvent bank for about one year, and had collected large amounts of money and had not "rendered any accounting for the same"; that they had never deposited any of the money so collected according to law; that they paid out large sums of money without filing any tableau of distribution, without any order of court, and contrary to law; that it is necessary to show cause, if any they have, why they should not file a true statement of their account and administration of said bank's affairs during the time the same was administered by them and pay same out according to law; that on their failure to comply with the law they and their surety be condemned to the use of the estate of said bank to pay 20 per cent. on all amounts not deposited, withdrawn, or paid out without authority; and that said liquidators have large sums of money in their hands and unaccounted for, and have wrongfully paid out said bank's funds collected by them, and should be held accountable for same.

The prayer of the petition was that the liquidators be served and cited, as the law directs, and that they be ordered, at a time to be fixed by the court, to show cause, if any they have, why they should not file a true statement of their administration of said bank's affairs and pay out all money shown to be in their possession as the law directs; and on their failure to comply they and their surety be condemned to pay 20 per cent. statutory damages allowed by law.

The court ordered the liquidators to show cause as prayed for on a certain date.

The defendants in rule appeared by counsel and excepted that the petition disclosed no cause of action, in that there was no allegation of the court having appointed them as liquidators, and that the remedy of the relators was by ordinary suit, and not by summary proceeding for an accounting; further that, not being officers or agents of the court, they cannot be penalized for refusing to account; and, further, since no specific indebtedness is alleged, statutory

damages cannot be allowed. Reserving the benefit of said exceptions, the respondents averred that they had turned over the entire assets of the bank, except the amounts distributed to the receivers appointed by the court.

The exceptions were overruled, and the liquidators were ordered to file on or before a certain date a true and correct statement and a full and itemized account of their administration of the Gibsland Bank showing all amounts collected by them, how disbursed, together with their official bank book showing amount on deposit by them.

The liquidators filed an account as ordered by the court, which was opposed by the Leidigh-Dalton Lumber Company, the Petty Stave Company, and other "deposit creditors." The two suits of said companies were by order of court consolidated with the proceedings for an accounting.

Judgment was rendered in favor of the liquidators, approving and homologating the account filed by them and discharging them from liability as liquidators, and rejecting and dismissing the opposition; all costs to be paid by plaintiffs in said suits and opponents in the matter of the receivership of the Gibsland State Bank.

Plaintiffs and opponents both appealed. The order for appeal appears on page 194, and the bond, on page 81, of the transcript. The record shows that the Leidigh-Dalton Lumber Company, as opponent to the provisional account of D. M. Atkins, receiver, had some months previously taken an appeal and furnished bond. The proceedings in the receivership, and on the rule against the liquidators, are so mixed up in the transcript that it requires a close examination to separate and distinguish them.

The consolidated cases are therefore before us on the appeal of both opponents.

A further examination of the transcript fails to disclose that the three liquidators were ever appointed or confirmed by the court. They were elected by the stockholders of the bank, and furnished bonds and security in favor of the bank and all persons in interest. Each of the bonds recite that the particular liquidator "having been confirmed by" the court, etc., but this was an error as shown by the decree ordering the receiver to turn over the assets to the liquidators.

Other receivers were subsequently appointed, and the liquidators turned over to them the remaining assets of the bank. More than a year later, the liquidators were ruled into court to file an account in the pending receivership.

The rule was a proceeding in the receivership for an accounting, as in the case of a receiver, or other administrator.

An account was the sole remedy sought, and, as no specific sum was alleged to be due by the liquidators, no money judgment could have been rendered against them on the face of the petition. The subsequent proceedings show that an account was filed, was opposed, and judgment rendered, as in case of the administration of estates in the hands of the court.

We therefore conclude that our first decree herein is correct.

[4] However, the dismissal of the rule for an accounting leaves the two separate suits for determination.

These suits having been consolidated with the rule for an accounting, there was but one judgment rendered, and the appeal therefrom brings up all the proceedings.

[5] In the case of In re Eckhardt Mfg. Co., 114 La. 135, 38 South. 83, this court said:

"In reaching our conclusions, it may be well to say that receivers can only act by direction of the court, while liquidators hold no official position and act independently of judicial sanction."

The receivers were the proper persons to sue the liquidators for an accounting, and

plaintiffs certainly had no right to sue the liquidators for specific sums of money for their own use and benefit.

It is therefore ordered that our first decree, herein rendered, be amended by dismissing the separate suits of the opponents and appellants, and, as thus amended, said decree is reinstated and made the final judgment of the court.

PROVOSTY, J., adheres to the opinion originally handed down.